1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6 EUREKA DIVISION

7

8 DON SPEED, et al.,          Case No.  21-cv-02542-RMI

9        Plaintiffs,

10    v.                       **ORDER REMANDING CASE TO THE**

**LAKE COUNTY SUPERIOR COURT**

11 FIRST CLASS CAPITAL, LLC, et al.,

12        Defendants.

13

14       Now pending before the court is a case that was removed here from the Lake County

15 Superior Court on April 8, 2021. *See* Notice of Removal (dkt. 1) at 1-3. The asserted basis for

16 removal was diversity of citizenship. *Id*. at 2. The facts of the case are simple – Plaintiffs occupy

17 12 spaces in the Clearlake Marina Mobilehome Park ("Clearlake Marina") and they allege that

18 amidst the state of emergency that was declared to exist in California due to the COVID-19

19 pandemic, and in violation of California law providing certain limits on rent increases during such

20 emergencies, that Defendants (two Texas corporations who recently purchased the Clearlake

21 Marina) have increased their rents beyond the sums allowed while also threatening them with

22 certain late fees and penalties – the increased rents and penalties became effective on or after

23 December 1, 2020. *See generally* Compl. (dkt. 1-1). One week after the case was removed and

24 docketed in this court, Defendants filed a motion seeking a declaration that the provision of

25 California law which prohibits certain rent increases during such emergencies is unconstitutional.

26 *See* Dfs.' Mot. (dkt. 5) at 12-25.

27       "A defendant may remove an action to federal court based on federal question jurisdiction

28 or diversity jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009)

United States District Court
Northern District of California

United States District Court
Northern District of California

(citing 28 U.S.C. § 1441). To invoke federal diversity jurisdiction under 28 U.S.C. § 1332(a), the matter in controversy must exceed the sum or value of $75,000. *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1121 (9th Cir. 2013). Because the amount in controversy is a prerequisite to exercising diversity jurisdiction, courts must scrutinize the pleadings as a threshold matter and, in cases where the district court determines that it lacks jurisdiction, the action should be remanded back to the state court. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). In light of which, the court "resolves all ambiguity in favor of remand." *Hunter*, 582 F.3d at 1042. For purposes of determining the propriety of remand, the court considers the amount in controversy at the time of removal. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("we write to clarify what it means to say that the amount in controversy is determined as of the time of removal . . . [] [and] [w]e conclude that the amount in controversy is not limited to damages incurred prior to removal . . . [r]ather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."). As discussed below, the determination of this sum, in light of *Chavez*, necessarily involves a great deal of ambiguity because it depends on how much longer the currently applicable state of emergency might last.

It is undisputed that the contested rent increases (and the associated late fees) became applicable on December 1, 2020, and that the operative complaint was docketed in this court on April 8, 2021. *See* Compl. (dkt. 1-1) at 3-6, 13; *see also* Defs.' Mot. (dkt. 5) at 6. As for the amount in controversy, Defendants' Notice of Removal (dkt. 1) implicitly concedes that the amount in controversy at the time of removal was less than $75,000, but that *assuming* a continuation of the state of emergency and the continued preclusion of their ability to charge their desired increased rental rates, the amount in controversy will eventually exceed $75,000. Specifically, Defendants contend that "[t]he combined rents, reimbursements, and charges otherwise due from all plaintiffs which the complaint seeks to enjoin, prohibit, and punish *for an indeterminate period of time* **will exceed** the sum of $75,000 and thus the amount in controversy

United States District Court
Northern District of California

1   under the allegations of the complaint exceeds $75,000." *See* Notice of Removal (dkt. 1) at 2

2   (emphasis supplied). For the reasons stated below, the court disagrees with Defendants' approach

3   because Defendants' characterization of "the allegations of the complaint" depends on certain

4   assumptions about how much longer the current state of emergency might last and how much

5   longer the statutory preclusion of Defendants' desired rent increases might last – which the court

6   finds to be an estimation of an amount in controversy that is impermissibly speculative and,

7   therefore, the court finds that Defendants have not shown that the amount-in-controversy

8   requirement is met.

9        The Complaint (dkt. 1-1) specifies all the necessary details pertaining to the occupants of

10  12 spaces in the Clearlake Marina who have been targeted for allegedly impermissible rent

11  increases by Defendants. *Id.* at 3-6. As mentioned, all of these rent increases became effective on

12  December 1, 2020, and the case was removed to this court on April 8, 2021 – yielding a period of

13  approximately 5 months between the two dates. Plaintiffs Speed and Sheehan were assessed a rent

14  increase of $120 per month each, equating to a total sum of $1200 in allegedly illegal increases as

15  to both Plaintiffs during this period. *Id.* at 3, 4. Plaintiff Melder was assessed a monthly increase

16  of $195, amounting to a total sum of $975. *Id.* at 3. Plaintiff Duffy's monthly increase was $215

17  per month for December of 2020, and then it was adjusted to a $115 monthly increase thereafter,

18  resulting in a total sum of $675. *Id.* at 4. Plaintiff Garcia's rent was increased by $200 per month,

19  which amounts to $1000. *Id.* Plaintiffs Mr. and Mrs. Lopez were assessed an increase in the

20  amount of $310 per month, resulting in a sum of $1,550. *Id.* at 4-5. Plaintiff Fambrini's monthly

21  increase was $230, resulting in a total sum of $1,150. *Id.* at 5. Plaintiff Bearce had his monthly

22  rent increased by $105, resulting in an amount of $525. *Id.* Plaintiff Thompson's monthly rent was

23  increased by $125, amounting to a total of $625. *Id.* at 5-6. Plaintiff Mendez's rent was increased

24  by $60 per month, resulting in a total of $300. *Id.* Plaintiff Butler's monthly rent was increased by

25  $75, yielding a total sum of $375. *Id.* Lastly, Plaintiff Kinkbride's rent was increased by $180 per

26  month, for a total of $900. *Id.* In total, the combined sums of contested rent increases amount to

27  $9,275. *See id.* at 3-6.

28        The Complaint also alleges that Plaintiffs were threatened with a monthly $35 late fee

United States District Court
Northern District of California

penalty, to be assessed on the 6th day of each month for unpaid rent amounts. *Id*. at 13. This late fee penalty, multiplied by the number of complaining Plaintiffs (12) and then multiplied by the number of months in question (5 months, that is, between December of 2020 and April of 2021) yields a total sum of $2,100. Plaintiffs also allege that they were further threatened with the assessment of a $10 daily late fee for each day of unpaid rent for each month, counting forward from the 6th day each month. *Id*. This daily late fee, when multiplied by 12 Plaintiffs and multiplied by the number of applicable days during the period in question (99 days) results in a total sum of $11,880 (which represents, if anything, an over-inflated figure due to the fact that Plaintiff Mendez has been paying the increased rents under protest (*see* Compl. (dkt. 1-1) at 6) meaning that the late fees should not apply for Plaintiff Mendez). Thus, the grand total of contested sums described in the Complaint amount only to $23,255 at the time of removal.[1]

Because Defendants' assertion of diversity jurisdiction depends on the unpredictable assumption of the continuation of the current state of emergency for the foreseeable future (and, by extension, Defendants' continued exposure to the statute prohibiting their desired rent increases – a statute which they seek to have invalidated as facially unconstitutional (*see* dkt. 5)), the court finds this approach to be impermissibly speculative because too many unsupported assumptions are required to support federal jurisdiction. *See e.g., Noll v. Travelcenters of Am. LLC*, 404 F. App'x 250, 251 (9th Cir. 2010) (citing *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1002 (9th Cir. 2007) ("[W]e cannot base our jurisdiction on Defendant's speculation and conjecture."); and, *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("We strictly construe the removal statute against removal jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."); *see also Fritsch v. Swift Transp. Co. of*

---

[1] In fact, regarding the $13,980 in late fees, Defendants contend that Plaintiffs "complain that defendants sent a letter stating that Plaintiffs will be subject to allegedly invalid $35 charge *if* they are issued notices for delinquent rent, or to various allegedly invalid late charges *if* they fail to pay their rent on time . . . [but that] [t]he Complaint does not allege that any such fee or late charge has ever actually been charged to any plaintiffs . . . [thus, the late fees] are hypothetical in nature, unripe for adjudication, and premature to consider outside the context in which they are actually imposed . . . [and] [a]s plaintiffs do not allege that they have been required to pay these fees and charges, they have no standing to complain of them in this case." Defs.' Mot (dkt. 5) at 7 n.3 (emphasis in original). Therefore, without these fees, the readily identifiable and non-speculative amount in controversy would only be $9,275 at the time of removal, and with the fees, the sum would still only be $23,255.

*Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018) ("Moreover, we are confident that district courts are well equipped to determine whether defendants have carried their burden of proving future attorneys' fees, and to determine when a fee estimate is too speculative because of the likelihood of a prompt settlement."); *Chajon v. Ford Motor Co.*, No. 2:18-cv-10533-RGK(RAOx), 2019 U.S. Dist. LEXIS 4254, at *3 (C.D. Cal. Jan. 8, 2019) (holding that prospective attorneys' fees were too speculative to be included in the amount in controversy); *Zhao v. Relayrides, Inc.*, No. 17-cv-04099-JCS, 2018 U.S. Dist. LEXIS 76988, at *4 (N.D. Cal. May 7, 2018) ("where a damages estimate is based on assumptions that have no evidentiary support in the record, the estimate may be insufficient to establish that the amount-in-controversy requirement is met."); *Jimerson v. Genco Distribution Sys.*, No. C 11-05157 SBA, 2012 U.S. Dist. LEXIS 149489, at *18-19 (N.D. Cal. Sep. 28, 2012) ("This alternative, speculative assumption is also unsupported by any evidence. As such, it is insufficient to establish the amount in controversy with respect to this claim."); and, *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("A speculative argument regarding the potential value of the award is insufficient.")

Therefore, because the undersigned has serious doubts about Defendants' right to removal under an approach that requires the undersigned to base federal jurisdiction on Defendants' conjecture about the future duration of the current state of emergency (which is what is precluding the implementation of Defendants' desired rent increases), the undersigned must decline the exercise of jurisdiction because it rests on an impermissibly shaky and uncertain foundation. In short, Defendants' assumption about the continuation of the state of emergency is not only unsupported by evidence, but because it involves speculation about future events, it is impossible to resolve this ambiguity in the court's jurisdiction with the presentation of any evidence other than simply waiting out the passage of time to see what the future might hold in store in this regard.

Due to the fact that it is entirely possible that the emergency declaration will be lifted before the accrual of unpaid rent increases and penalties reaches the sum of $75,000, the court finds that this ambiguity in its jurisdiction must be resolved in favor of a remand. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("a defendant cannot establish

removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions"). In any event, if it comes to pass that, with the appropriate passage of time or some other changes in circumstance that cause Defendants' conjecture and assumptions to become reality, then, under such changed circumstances it should be noted that "a defendant who fails in an attempt to remove on the initial pleadings can file a removal petition when subsequent pleadings or events reveal a *new* and *different* ground for removal." *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 732 (9th Cir. 1991) (quoting *FDIC v. Santiago Plaza*, 598 F.2d 634, 636 (1st Cir. 1979)) (emphasis in original).

**CONCLUSION**

Accordingly, for the reasons stated herein, this case is **REMANDED** to the Superior Court for Lake County, California.

**IT IS SO ORDERED.**

Dated: June 14, 2021

_____
ROBERT M. ILLMAN
United States Magistrate Judge